NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NICOLE SCHEFFLER,<br>　　　　Plaintiff,<br>　v.<br>TD BANK, N.A.,<br>　　　　Defendant. | Civil No. 18-06688 (RBK/KMW)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter is before the Court on Defendant TD Bank's motion to dismiss (Doc. No. 10) Plaintiff Nicole Scheffler's Complaint (Doc. No. 1) under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Defendant's motion is **GRANTED**.

## I. BACKGROUND[1]

This case concerns a high-earning employee, whose former personal assistant stole her identity and took over her TD Bank checking and savings accounts. (Compl. at ¶¶ 11–12.) Plaintiff now sues Defendant TD Bank for alleged misconduct surrounding the takeover.

On April 15, 2016, Plaintiff's accountant notified her that over $100,000 was missing from her TD Bank checking and savings accounts. (*Id.* at ¶¶ 16, 20.) The next day, Plaintiff called Defendant about the missing money and to dispute any electronic transfers from her account. (*Id.* at ¶ 17.) Plaintiff also visited a TD Bank branch in Pennsylvania on April 19 and 20, at which

---

[1] On this motion to dismiss, the Court accepts as true the facts pled in the Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

1

time the branch took down an incident report containing the wrong dates, amounts, and party names. (*Id.* at ¶¶ 18, 25.)

After sifting through records to determine what happened to the money, Plaintiff discovered that from some time in 2012 until April 2016, her personal assistant, Melissa Melchiore, took over Plaintiff's TD Bank checking and savings accounts without Plaintiff's knowledge or consent and used electronic transfers to draw down the accounts. (*Id.* at ¶¶ 12, 19, 21.) Melchiore, who pled guilty to criminal charges, orchestrated the account takeover by stealing Plaintiff's identity; Melchiore made purchases with two of Plaintiff's credit cards and paid them off by electronically transferring funds from Plaintiff's TD Bank checking and savings accounts. (*Id.* at ¶¶ 22, 30, 31.) Melchiore also changed the contact information associated with the credit cards so that Plaintiff would not receive notice of Melchiore's spending. (*Id.* at ¶ 29.) Plaintiff disputed over 180 electronic transfers in total. (*Id.* at ¶ 27.)

Although the contract is attached only to Defendant's motion and not the Complaint, Plaintiff notes that she accepted, but never read, an "Account Agreement" with Defendant. (Pl.'s Opp. at 7; Def.'s Br. at Ex. B (Doc. No. 10-2).) Defendant ultimately returned some of the lost money to Plaintiff but not the full loss and declined to reimburse at least some fees charged in connection with the unauthorized transfers. (Compl. at ¶¶ 28, 44.) This suit followed, and Defendant moves to dismiss the Complaint.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."

*Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, a court "assume[s] the[] veracity" of well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive when a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Plaintiff asserts six claims against Defendant: (1) breach of contract (Count I); (2) breach of the implied covenant of good faith and fair dealing (Count II); (3) unconscionability (Count III); (4) conversion (Count IV); (5) unjust enrichment (Count V); and (6) violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 (Count VI). Because Plaintiff alleges no plausible claims, Plaintiff's Complaint is dismissed.[2]

### A. The Court May Consider the Account Agreement

Before addressing Plaintiff's claims, the Court rejects Plaintiff's contentions that in deciding this motion, the Court may not consider the Account Agreement, which is not attached to the Complaint because: (1) "nowhere in the complaint is there a mention of the Account Agreement nor is any agreement attached to the Complaint"; and (2) Plaintiff did not have the Account Agreement when she filed the Complaint. (Pl.'s Opp. at 5.) Both arguments fail. The first argument is contrary to law. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents

---

[2] Like both parties, the Court applies New Jersey law where applicable in deciding this motion.

on which its claim is based by failing to attach or explicitly cite them."). The second falls equally short.

As Defendant notes, courts may consider documents like contracts that are integral to the Complaint. *See Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-cv-3229, 2015 WL 1472665, at *1 n.2 (D.N.J. Mar. 31, 2015). That applies here. Although Plaintiff contends that she did not have a copy when she filed the Complaint,[3] Plaintiff does not allege that her claims are based on any contract other than the Account Agreement, and her opposition brief notes that she accepted it. (Pl.'s Opp. at 5–9.) In fact, Plaintiff appears to admit that her claims arise under the Account Agreement in arguing that her breach of contract claim is timely under one of its terms, that its terms are unreasonable, and that Defendant violated its "spirit." (Pl.'s Opp. at 6–11.) The Account Agreement is thus integral to evaluating Plaintiff's contract contentions. Plaintiff cannot challenge and bring claims under a contract yet prevent the Court from considering it. Ultimately, however, this issue is of no consequence—Plaintiff's claims fail for reasons apparent on the face of the Complaint and that do not implicate the Account Agreement's terms.

### B. Breach of Contract and Implied Covenant Claims (Counts I and II)

Plaintiff fails to plausibly allege a breach of contract and the implied covenant of good faith and fair dealing. In Count I, Plaintiff alleges that Defendant breached its contract by "refusing to return money that was transferred without [Plaintiff's] authorization," and by "refusing to reimburse fees in connection with the unauthorized money transfers." (Compl. at ¶ 44.) But Plaintiff's Complaint does not identify the contract at issue or cite any specific provisions to

---

[3] Federal Rule of Civil Procedure 11(b) requires an attorney presenting a pleading to the Court to engage in a reasonable inquiry and certify that the factual contentions alleged have evidentiary support. Fed. R. Civ. P. 11(b)(3). Plaintiff does not explain why she could not obtain the Account Agreement with minimal pre-filing investigation, or if she undertook any efforts at all to ensure that her breach of contract allegations had the required support.

support a breach. Plaintiff cannot plausibly allege a breach of contract on mere say-so: Plaintiff "must, at a minimum, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-cv-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011). Because Plaintiff has not, Count I is dismissed, without prejudice. *See id.* (citing *Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F. Supp. 2d 451, 59 (D.N.J. 2009)).[4]

Count II also fails. Implied covenant claims must be based on conduct distinct from the alleged breach of contract. *See Ricketti v. Barry*, No. 13-cv-6804, 2015 WL 1013547, at *7 (D.N.J. Mar. 9, 2015). Not so here. Like Count I, Count II alleges that Defendant breached the implied covenant by "refus[ing] to return money and reimburse fees incurred as a result of the unauthorized use of [Plaintiff's] bank accounts." (*Id.* at ¶¶ 47–48.) Thus, Count II duplicates Count I. Yet rather than address this deficiency, Plaintiff's lone argument exposes another one: in claiming that Count II should not be dismissed because Defendant violated the "spirit" of an agreement, Plaintiff cites no support for what that "spirit" is. (Pl.'s Opp. at 10–11.) Instead, she attempts to plead the "spirit" of a contract she apparently never read or possessed. That is not plausible. (Compl. at ¶ 47; Pl.'s Opp. at 5–7.) Count II is dismissed, without prejudice.

**C. Unconscionability (Count III)**

Plaintiff fails to plausibly allege unconscionability, no matter how Count III is asserted. Plaintiff alleges that Defendant's "policies and practices are substantially and procedurally unconscionable" in "refusing to return money and reimburse fees incurred as a result of the

---

[4] If Plaintiff seeks to amend, Plaintiff should have no trouble citing provisions of the Account Agreement that could support her claim—Defendant provided a copy in its motion and Plaintiff states that she agreed to it. At this time, the Court reserves judgment on the parties' arguments that Count I is untimely under the Account Agreement. (Def.'s Br. at 5–9; Pl.'s Opp. at 6–7.)

unauthorized use of [Plaintiff's] bank accounts." (Compl. at ¶ 51.) Plaintiff "sustained damages" as a result. (*Id.* at ¶ 52.)

Whether used as a sword or a shield, Count III is deficient. "As a matter of law, the doctrine of unconscionability generally 'acts as a shield against enforcement of an unreasonable contract and not a sword on a claim for affirmative relief.'" *Hunter v. Sterling Bank, Inc.*, No. 09-cv-172, 2011 WL 5921388, at *8 (D.N.J. Nov. 28, 2011) (quoting *Sitogum Holdings, Inc. v. Ropes,* 352 N.J. Super. 555, 566 n.14 (Ch. Div. 2002)). Therefore, despite Plaintiff's claims to the contrary, "it [cannot] be brought as an affirmative claim or cause of action." *Id.*; *see also Donnelly v. Option One Mortg. Corp.*, No. 11-cv-7019, 2014 WL 1266209, at *13 (D.N.J. Mar. 26, 2014); *Alboyacian v. BP Prod. N. Am., Inc.*, No. 9-cv-5143, 2011 WL 5873039, at *5 (D.N.J. Nov. 22, 2011); *Lind v. New Hope Prop., LLC*, No. 9-cv-3757, 2010 WL 1493003, at *7 (D.N.J. Apr. 13, 2010). Any affirmative unconscionability claim is thus dismissed, with prejudice. (Pl.'s Opp. at 12.)

Count III further fails if asserted as a shield against the enforcement of Defendant's allegedly unreasonable contract—an issue also discussed below with Plaintiff's unjust enrichment claim. (Pl.'s Opp. at 11.) Plaintiff offers only conclusory, generalized allegations regarding Defendant's allegedly unconscionable policies and practices. The arguments in Plaintiff's opposition brief, which are equally devoid of factual support, cannot cure this deficiency. Nor can they properly amend Plaintiff's Complaint. *See Alfaro v. Client Servs., Inc.*, No. 11-cv-05463, 2012 WL 1150845, at *1 n.2 (D.N.J. Apr. 5, 2012). Without any plausible allegations to support Plaintiff's claim that any contract is unconscionable, Count III is dismissed. *See Donnelly*, 2014 WL 1266209, at *1; *Lind*, 2010 WL 1493003, at *7.

### D. Conversion (Count IV)

Plaintiff fails to plausibly allege conversion. To state a claim for conversion, a plaintiff must allege: (1) the existence of property; (2) the right to immediate possession of the property; and (3) the wrongful interference by a defendant. *Lockhart v. U.S. Bank Nat'l Ass'n*, No. 16-cv-4398, 2017 WL 2709563, at *5 (D.N.J. June 22, 2017). Plaintiff alleges that Defendant committed conversion by "wrongfully refus[ing] to reimburse fees and to return money to Plaintiff when a third party used funds in [Plaintiff's] bank accounts without consent or authorization." (Compl. at ¶ 55; *see also* Pl.'s Opp. at 13.) But this is the same conduct that Plaintiff claims is a breach of contract.[5] (Compl. at ¶ 44.) As with that deficient claim, Plaintiff pleads no facts to plausibly suggest that she had the right to immediate possession of this money from Defendant, or that Defendant's actions amounted to wrongful interference. With no basis alleged to plausibly support these contentions, Count IV is dismissed, without prejudice.

### E. Unjust Enrichment (Count V)

Plaintiff fails to plausibly allege unjust enrichment. To state a claim for unjust enrichment, a plaintiff must plausibly allege that: (1) defendant received a benefit; (2) defendant's retention of the benefit without payment would be unjust; (3) plaintiff expected remuneration at the time it conferred the benefit on defendant; and (4) the absence of remuneration enriched defendant beyond its contractual rights. *See L.E.A.D., Inc. v. Ne. Imp.-Exp., Inc.*, No. 17-cv-4398, 2018 WL

---

[5] *D & D Tech., Inc. v. CytoCore, Inc.*, No. 14-cv-4217, 2014 WL 4367314, at *4 (D.N.J. Sept. 2, 2014) (dismissing conversion claim because the obligation giving rise to it "allegedly ar[o]se[] out of the parties contract(s)"); *Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, No. 11-cv-1279, 2011 WL 3022243, at *7 (D.N.J. July 22, 2011) (dismissing conversion claim because the "alleged failure to fulfill the requirements of the purchase of said assets sounds in contract, not tort").

2317535, at *4 (D.N.J. May 22, 2018) (citing *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)).

When a valid contract governs the parties' rights and obligations, a party cannot bring a claim for unjust enrichment. *See Melville v. Spark Energy, Inc.*, No. 15-cv-8706, 2016 WL 6775635, at *5 (D.N.J. Nov. 15, 2016) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982)). Even if the plaintiff pleads unjust enrichment in the alternative, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Id.* (quoting *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 (3d Cir. 2014)).

Here, Plaintiff brings her unjust enrichment claim as an alternative to her breach of contract claim. (Pl.'s Opp. at 13.) Taken in the light most favorable to her, Plaintiff's allegations dispute the validity of at least some portion of the Account Agreement or whatever uncited contract she intends to invoke. Plaintiff alleges that Defendant's "policies and practices are substantially and procedurally unconscionable in connection with refusing to return money and reimburse fees incurred as a result of the unauthorized use" of Plaintiff's bank accounts. (Compl. at ¶ 51.) But as explained above, Plaintiff alleges no facts beyond these mere conclusions to suggest why the contract is unconscionable. What remains, by Plaintiff's own pleading, are rights governed by contract. Indeed, Plaintiff's unjust enrichment and breach of contract claims are based on the same conduct—Defendant's refusal to remit money and the corresponding transfer fees. (Compl. at ¶¶ 44, 60.) Count V is dismissed, without prejudice.

### F. Electronic Fund Transfer Act (Count VI)

Finally, Plaintiff fails to plausibly allege a violation of the Electronic Fund Transfer Act ("EFTA"), which "provides a private cause of action for a consumer to seek damages for financial

institutions' unauthorized electronic transfer of funds from the consumer's account." *Golden-Koether v. JPMorgan Chase Bank, N.A.*, No. 11-cv-3586, 2011 WL 6002979, at *2 (D.N.J. Nov. 29, 2011); *see also* 15 U.S.C. § 1693 *et seq.* When a consumer believes an unauthorized electronic fund transfer or other error has occurred, "the consumer must provide, within sixty days of receiving documentation such as an account statement, oral or written notice to a financial institution setting forth the identifying account information and the basis for the consumer's belief that the account contains an error." *Id.* (citing 15 U.S.C. § 1693f(a)). Such claims must be brought "within one year from the date of the occurrence of the violation." *Id.* (citing 15 U.S.C. § 1693m(g)). "The statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *Id.* (citing *Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 145 (D. Mass. 2005)).

Here, Plaintiff does not allege the dates on which she received documentation like an account statement that might show electronic transfers from her checking and savings accounts. Nor does she allege the dates for the electronic transfers at issue. But Plaintiff does allege that on April 16, 2016, she "notified Defendant about the missing money by calling them . . . to dispute any electronic fund transfers." (Compl. at ¶ 18.) Thus, it is evident from the face of the Complaint that the one-year statute of limitations bars Plaintiff's EFTA claim—a proposition she does not dispute. (Pl.'s Opp. at 14.) Assuming that Plaintiff provided notice within sixty days of receiving bank statements showing the disputed transfers, the limitations period began to run on April 26, 2016, ten days after the date on which Plaintiff alleges that she notified Defendant of the missing money. Thus, the one-year limitations period expired on April 26, 2017, about one year before Plaintiff's Complaint on April 13, 2018. (Doc. No. 1.)

Rather than dispute these timeframes or Defendant's legal analysis, Plaintiff argues that equitable tolling saves her claim. (Pl.'s Opp. at 14.) She also references the discovery rule. (*Id.* at 14–16.) Neither rescues her here.

As to the discovery rule, Plaintiff does not discuss the doctrine's legal requirements or analyze why it applies. Instead, her opposition merely references the doctrine in passing and relies on a claim not pled in the Complaint—that she could not have discovered the transfers before her accountant notified her, even if she had reviewed her account statements, because the transfers were in "very small amounts" and appeared reasonable. (Pl.'s Opp. at 15.) Even if properly considered, Plaintiff's fleeting assertions do not alter the conclusions above. If anything, they account for Plaintiff's contentions, as the limitations period began to run ten days after Plaintiff alleges that she heard from her accountant and notified Defendant of the missing funds. Absent elaboration, it is not clear why Plaintiff believes the discovery rule applies and helps her case. As pled, it does not.

Plaintiff's reliance on equitable tolling falls equally flat. Equitable tolling, which courts extend "only sparingly," can "rescue a claim otherwise barred as untimely by a statute of limitations [only] when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Estate of Clark ex rel. Clark v. Toronto Dominion Bank*, No. 12-cv-6259, 2013 WL 1159014, at *4 (E.D. Pa. Mar. 21, 2013) (quoting *Glover v. FDIC*, 698 F.3d 139, 151 (3d Cir. 2012)). Those circumstances are: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.*

Here, Plaintiff alleges no facts to plausibly suggest that equitable tolling applies. Plaintiff does not claim that she timely asserted her rights in the wrong forum. Nor does she plausibly allege facts to suggest Defendant actively misled her regarding her cause of action. Even viewed in the light most favorable to her, Plaintiff's claim that Defendant issued an incident report containing wrong dates, amounts, and party names falls short of alleging that Defendant actively misled her regarding her cause of action. Regardless, Plaintiff does not argue that this allegation justifies equitable tolling, lest cite cases in support.

Plaintiff does, however, cite one inapposite case in claiming that "[e]xtraordinary circumstances exist" to warrant equitable tolling because Plaintiff "could not have known about the fraud and she believed that Defendant would make things right and return the money to her account." (Pl.'s Opp. at 15–16 (citing *Clark*, 2013 WL 1159014, at *5).) In *Clark*, the court denied the defendant's motion to dismiss plaintiff's EFTA claim, holding that the plaintiff could proceed to discovery to determine whether extraordinary circumstances existed to equitably toll the limitations period. *Clark*, 2013 WL 1159014, at * 5–6. Unlike here, the plaintiff suffered from Parkinson's disease and cognitive and memory impairments. *Id.* at *6. Thus, the court reasoned that it needed discovery on whether Plaintiff's mental state could constitute the "extraordinary circumstances" needed to toll the statute of limitations. *Id.* Because Plaintiff alleges no such impairments here, Plaintiff's EFTA claim remains untimely. At this time, however, dismissal is without prejudice, as attempted amendment may not definitively be futile.

## IV. CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**, except as to Plaintiff's unconscionability claim, which is **DISMISSED WITH PREJUDICE** to the extent it seeks relief as an affirmative cause of action. If Plaintiff seeks to amend her Complaint, she must properly plead the *citizenship* of each party

and where Defendant maintains *its* principle place of business. (Compl. at ¶¶ 4, 10); *see also Hunt v. Acromed Corp.*, 961 F.2d 1079 (3d Cir. 1992) (noting that allegations of corporate citizenship must include the state where the corporation has *its* principal place of business, and allegations of *a* principal place of business are insufficient); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) (noting that the citizenship of each party must be alleged specifically and "mere residency in a state is insufficient for purposes of diversity").

Dated: 1/15/2019                                    /s/ Robert B. Kugler
                                                                                         ROBERT B. KUGLER
                                                                                         United States District Judge